Filed 7/11/14  P. v. Higerada CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JORGE LUIS HIGERADA,<br><br>     Defendant and Appellant. | B248100<br><br>(Los Angeles County<br>Super. Ct. No. KA097433) |

APPEAL from a judgment of the Superior Court of Los Angeles County. George Genesta, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jorge Luis Higerada appeals from the judgment entered after he was convicted of grand theft, contending that the trial court erred by allowing his parole officer to testify at trial that Higerada appeared in a video recording of the incident. Although we conclude that the trial court erred, we hold that the error was harmless and therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

At around 1:00 p.m. on March 19, 2012, Jorge Luis Higerada entered the South El Monte branch of Bank of the West, approached teller Marco Zubia, and mumbled something indecipherable. When Zubia asked, "Excuse me?" Higerada lifted his shirt, put his hand near the waistband, and said, "Give me all the money. Give me the money." Higerada's voice was "low . . . and serious." Although Zubia did not see a weapon, he was afraid that Higerada was armed and handed over all the money in his drawer, including a stack of $20 bills that concealed an explosive dye pack. Higerada inspected that stack and handed it back to Zubia, stating, "I don't want the dye pack." Higerada took the loose bills, amounting to more than $2,000, and fled. Elvira Rodriguez, the bank's assistant manager, witnessed this exchange and alerted manager Raquel Alvarado, who tripped the bank's alarm.

Higerada was on parole at the time and his parole officer – Arnold Valdez – contacted the F.B.I. to identify Higerada after coming across a photo of the incident that the F.B.I. had circulated. Based on Valdez's information, an F.B.I. agent showed Zubia, Rodriguez, and Alvarado a six-pack photo lineup that included Higerada's photo. All three identified Higerada as the perpetrator.

Higerada was charged with robbery, along with allegations that he had numerous prior convictions under the Three Strikes law and for sentence enhancement purposes. In addition to the three bank employees, Valdez testified about having identified Higerada, but was identified as a law enforcement officer who supervised him. The jury also saw the bank's surveillance video recording, and Higerada admitted that he was the person depicted in that video.

2

Higerada testified that he had been drinking heavily for five straight days and had finished off a 40-ounce bottle of beer in the hours leading up the incident. According to Higerada, he ended up in the shopping district to panhandle. After panhandling without success in the nearby area, Higerada claimed he entered the bank to ask for money. However, Higerada said, he was so drunk that he did not see the bank's signs or ATM and believed he was entering some sort of agency, not a bank.

As best he could recall, Higerada walked up to the counter and said, "Can you give me some money?" or "Give me some money." Higerada denied lifting his shirt or reaching toward his waistband and believed that Zubia might have seen his crooked and "fused" left index finger and believed it indicated he was reaching for something.

When Zubia placed the loose bills and the stack of $20 bills on the counter, Higerada returned the stack and said, "I don't need that much. Take that back." Higerada testified that he did not know what a dye pack looked like, did not inspect the stack of bills to look for one, and did not say that he did not want the dye pack. Higerada began to count the money after leaving the bank and panicked and ran when he realized how much he had been given. He did not threaten or intend to threaten the teller.

The jury acquitted Higerada of robbery but convicted him of the lesser included offense of grand theft. Higerada contends the trial court erred by allowing Parole Officer Valdez to testify that he identified Higerada from the F.B.I. photo because the testimony was irrelevant, more prejudicial than probative (Evid. Code, § 352), and violated his constitutional due process rights.

**DISCUSSION**

1.    *Facts Leading to the Admission of Valdez's Testimony*

Higerada represented himself during the early stages of the proceedings, and during a November 2012 hearing where plea offers were discussed, Higerada said that based on his legal research concerning the bank's video surveillance footage he was "going to admit I am the person in the video, but I never robbed. I never committed a

robbery." At a February 27, 2013 hearing, where Higerada was represented by counsel, the prosecution brought a motion asking the court to allow evidence of that in-court admission. The trial court granted that motion, but said the jury would also get to hear Higerada's statements that he had not committed a robbery.

The following day defense counsel moved to exclude Valdez's testimony, arguing that the previous day's ruling that allowed evidence of Higerada's admission that he was shown in the surveillance video effectively eliminated the issue of identity from the case. Defense counsel said identity was no longer an issue and that she would concede the issue "at this point." The prosecutor said she was no longer sure she would introduce Higerada's statement, at least in part because the jury would also hear Higerada's statement that he did not commit a robbery. The prosecutor noted that she had alternative identification evidence available.

The trial court said it would allow Valdez to testify that he identified Higerada from the F.B.I. photo. It also ruled that Valdez had to identify himself as a law enforcement officer with the State of California who supervised Higerada, not as his parole officer. The court also told counsel: "Let's see how this plays out. Don't mention this person, because it may not be an issue of your concern. But if you insist on it, we will address it at that time."

The prosecution called Valdez as a witness after the three bank employees testified. No objections were raised and Valdez went on to testify as outlined above. The trial court instructed the jury that it could use Valdez's statements about supervising Higerada only to explain his familiarity with Higerada and that it could not speculate as to why Higerada was being supervised or let that fact influence its deliberations. Soon after, however, the trial court on its own motion reversed its previous ruling that the prosecution could introduce evidence of Higerada's in-court admission that he was the person shown in the bank's surveillance video. The trial court believed the evidence would be more prejudicial than probative in light of the various witnesses who had already identified Higerada, especially because Higerada made the statements during a discussion about plea offers at a time when he was representing himself. If Higerada

4

testified and denied that he was the perpetrator, than his statement could come in as rebuttal evidence, the trial court ruled.

2.       *Valdez's Testimony Was Inadmissible*

Higerada contends that once he conceded he was the person shown in the F.B.I. photo and surveillance video the trial court erred by admitting Valdez's identification testimony.  When a defendant concedes the issue of his identity but contends instead that a crime did not occur, the issue of the perpetrator's identity is not at issue.  (*People v. Pitts* (1990) 223 Cal.App.3d 606, 833-834; see *People v. Daniels* (1991) 52 Cal.3d 815, 858 [identity evidence offered by prosecution relevant because defendant *had not* conceded the issue]; *People v. Tassell* (1984) 36 Cal.3d 77, 88-89, overruled on another ground in *People v. Ewoldt* (1994) 7 Cal.4th 380, 401-402; *People v. Brown* (1993) 17 Cal.App.4th 1389, 1396.)  We review the trial court's ruling under the abuse of discretion standard.  (*People v. Cowan* (2010) 50 Cal.4th 401, 482.)

Respondent contends the testimony was relevant for three reasons:  (1)  Valdez knew Higerada, making his identification the strongest evidence; (2)  Higerada did not concede the issue; and (3)  the basis of Higerada's argument – the trial court's decision to admit his in-court admission that he was depicted in the video – evaporated because the trial court reversed its ruling.

We understand Higerada's concerns about the relevancy of Valdez's testimony (see *People v. Xiong* (2013) 215 Cal.App.4th 1259, 1275 [evidence of how a suspect came to the attention of the police as a possible suspect is irrelevant unless it provides independent evidence of guilt]), but assume for our purposes that the evidence was relevant because at least in the abstract Valdez's identification was of a different nature than the eyewitness identification.  Our primary concern is whether the evidence should have been excluded because it was more prejudicial than probative.  (Evid. Code, § 352.)

The trial court shared this concern because it took steps to sanitize Valdez's testimony by identifying him as something other than Higerada's parole officer. Higerada contends that the trial court's alternative – having Valdez identify himself as a

law enforcement officer who supervised Higerada – was still prejudicial. He also contends the evidence had little probative value and was merely cumulative of the overwhelming evidence that he was the person who took money from the bank.

Respondent argues the evidence was probative because Valdez's statement that he supervised Higerada laid the foundation for his identification testimony and that any prejudicial effect was cured by the trial court's instruction concerning the limited use of that evidence.

Although the trial court took steps to sanitize Valdez's testimony, those steps did not go far enough. Even with the trial court's admonition that the jury should not speculate about Valdez's connection to Higerada, the evidence likely invited the jury to speculate as to why a law enforcement officer would be supervising someone unless he was on parole or probation. We therefore conclude that the trial court's effort to sanitize the evidence did not effectively remove the potential risk for undue prejudice or jury confusion.

3.    *The Error Was Harmless*

Even though error occurred, we believe the error was harmless because a different result was not reasonably probable absent that error. (*People v. Jablonski* (2006) 37 Cal.4th 774, 823 [applying state law standard under *People v. Watson* (1956) 46 Cal.2d 818, 836].) First, Higerada testified that he had three prior convictions involving crimes of moral turpitude, meaning that the jury learned from admissible evidence that Higerada had a criminal record. Even if the jury surmised that Valdez had been Higerada's parole officer, that fact did not pile on any additional stigma to what the jury heard from Higerada himself. Second, three eyewitnesses and the surveillance video showed Higerada inside the bank. Third, Higerada admitted that he entered the bank and took the money. His defense consisted of the improbable explanation that he was so blind drunk he did not know he was inside a bank and that he did not have the intent to steal, only to beg for a handout. The jury discredited that explanation, but believed

6

Higerada's testimony that he did not use force or fear, thereby convicting him of only the lesser included offense of grand theft.  We therefore conclude that the error was harmless.

Higerada also raises a constitutional due process argument about Valdez's testimony, but the state law harmless standard error still applies because at bottom Higerada has raised an issue concerning the erroneous application of the normal rules of evidence.  (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.)  Even if we applied the higher federal standard – that the error must be harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24) – we would reach the same result.  (*People v. Jablonski, supra,* 37 Cal.4th at p. 823.)

## DISPOSITION

The judgment is affirmed.

RUBIN, ACTING P. J.

WE CONCUR:

FLIER, J.

GRIMES, J.

7